UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICK DENNIS SMITH,

                              Plaintiff,                    **MEMORANDUM
                                                           OPINION & ORDER**

         - against -                                       18 Civ. 8545 (PGG)

NEW YORK CITY DEPARTMENT OF
EDUCATION, and NEW YORK CITY
DEPARTMENT OF FINANCE,

                              Defendants.

PAUL G. GARDEPHE, U.S.D.J.:

Pro se plaintiff Patrick Smith brings this action against defendants New

York City Department of Education ("DOE") and New York City Department of Finance

("DOF") (together "Defendants"). The Court construes the Second Amended Complaint

("SAC") as alleging (1) disability discrimination in violation of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12112 et seq., the Rehabilitation Act, 29 U.S.C. §

794, the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290 et

seq., and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code

§ 8-101 et seq.; (2) failure to accommodate in violation of the ADA, the Rehabilitation

Act, the NYSHRL, and the NYCHRL; (3) age discrimination in violation of the Age

Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621-634, the NYSHRL,

and the NYCHRL; and (4) retaliation in violation of the ADA, the Rehabilitation Act, the

ADEA, the NYSHRL, and the NYCHRL. (See Cmplt. (Dkt. No. 1) at 5; SAC (Dkt. No.

17) at 4-5l; Pltf. Opp. (Dkt. No. 33) at 1, 17-18[1]  Defendants moved to dismiss the SAC under Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 27)

In a September 30, 2019 Order (Dkt. No. 47), this Court (1) granted DOF's motion to dismiss; and (2) granted DOE's motion as to Plaintiff's discrimination claims under the ADA, the Rehabilitation Act, and the ADEA.  DOE's motion was otherwise denied.  (See Dkt. No. 47)  The purpose of this opinion and order is to explain the Court's reasoning.

---

[1]  The page numbers referenced in this Order correspond to the page numbers designated by the this District's Electronic Case Filing system.

# BACKGROUND

## I. FACTS[2]

### A. Plaintiff's Transfer Request

Plaintiff is a 48-year-old special education teacher. He is assigned to DOE's High

School for Tourism and Hospitality, which is located in the Bronx. (SAC (Dkt. No. 17) at 3)

Plaintiff is a veteran and suffers from hypertension and partial hearing loss, and he

"intermittently" wears hearing aids. (SAC (Dkt. No. 17) at 10-11; <u>see also</u> Cmplt. (Dkt. No. 1)

at 23)

---

[2] The Court's factual summary is derived from the Complaint, the Amended Complaint, and the SAC, and from the exhibits to these pleadings, including Plaintiff's November 9, 2017 New York State Division of Human Rights ("NYSDHR") complaint; the NYSDHR's decision dismissing Plaintiff's complaint; and the Equal Employment Opportunity Commission ("EEOC") decision adopting the findings of the NYSDHR. (<u>See</u> Cmplt. (Dkt. No. 1) at 9-17 (NYSDHR complaint); <u>id.</u> at 19-21 (NYSDHR decision); <u>id.</u> at 18 (EEOC decision)).

In resolving a motion to dismiss a <u>pro se</u> action, courts consider all facts pled in complaints filed by the <u>pro se</u> litigant. <u>Augustus v. Brookdale Hosp. Med. Ctr.</u>, No. 13-CV-5374 (DLI) (RML), 2015 WL 5655709, at *1 n.2 (E.D.N.Y. Sept. 24, 2015) (considering facts pled in both the original and amended complaints); <u>see also</u> <u>Little v. City of New York</u>, No. 13-CV-3813 (JGK), 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) (same); <u>Fleming v. City of New York</u>, No. 10-CV-3345 (AT) (RLE), 2014 WL 6769618, at *3 (S.D.N.Y. Nov. 26, 2014) (same). Exhibits attached to a complaint may also be considered on a motion to dismiss. <u>See</u> <u>Augustus</u>, 2015 WL 5655709, at *1 ("The Court will also consider facts derived from the documents annexed to the Original Complaint." (citing <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.")).

This Court has also taken judicial notice of the decisions rendered by the NYSDHR and the EEOC, because those decisions are a matter of public record. <u>See</u> <u>Vargas v. Reliant Realty</u>, No. 13-CV-2341 (PGG), 2014 WL 4446165, at *1 (S.D.N.Y. Sept. 9, 2014) ("'[A] court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.'" (quoting <u>Evans v. N.Y. Botanical Garden</u>, No. 02 Civ. 3591(RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002))); <u>see also</u> <u>Day v. Distinctive Pers., Inc.</u>, 656 F. Supp. 2d 331, 332 (E.D.N.Y. 2009) ("In deciding motions to dismiss employment discrimination actions under Title VII, courts regularly take notice of EEOC and NYDHR filings and determinations relating to plaintiff's claims.").

On September 25, 2017, Plaintiff submitted to DOE a notation in his medical records made by his primary care physician, Dr. Cherian Alexander. (SAC (Dkt. No. 17) at 10-11; see also Cmplt. (Dkt. No. 1) at 23) In his progress notes, Dr. Alexander states that Plaintiff suffers from hypertension and a hearing problem and that his commute from his home in Rockaway Beach, Queens, to his Bronx high school "is averaging 2 hrs each way." (Cmplt. (Dkt. No. 1) at 23) Dr. Alexander states that in "view of this travel in subway with lot[s] of sound[,] [Plaintiff's] hearing is deteriorating and with increase[d] stress he [has] started to get high blood pressure. Kindly help him to get a transfer of school near to his house." (Cmplt. (Dkt. No. 1) at 23) According to Plaintiff, Dr. Alexander told him "that by shortening [Plaintiff's] commute, [Plaintiff's] hypertension would be ameliorated somewhat." (SAC (Dkt. No. 17) at 11) On November 15, 2017, DOE denied Plaintiff's transfer request as "not medically warranted." (Id.)

**B.      Plaintiff's NYSDHR Complaint**

On November 9, 2017, Plaintiff filed a complaint against DOE with the NYSDHR. (See Cmplt. (Dkt. No. 1) at 6); id. at 19 (NYSDHR determination)) In his NYSDHR complaint, Plaintiff claims that (1) he was repeatedly rejected for positions at DOE schools between May and August 2017; (2) he was denied these positions because of his age, salary, and veteran status; and (3) DOE discriminated against him on the basis of his age, medical condition, and status as a veteran by denying him a promotion or pay raise, an accommodation for his disability, and a transfer to a different school. (Id. at 12-15 (NYSDHR complaint)) Plaintiff is a thirteen-year combat veteran of the Marine Corps, and was partially disabled as the result of his service. (Id. at 11) Plaintiff states that "[s]ince May, [he] ha[s] been attempting to obtain a transfer to a high school nearer [to his] home," and he has "applied to over forty middle and high school positions and was not offered a job." (Id. at 13) Plaintiff "attribute[s] [these rejections]

4

to [his] age (46), salary . . . and veteran status." (Id.) Plaintiff alleges that "due to [his] age, high salary and veteran[] status, as well as [his] medical condition of hypertension, which the Department of Education was made aware of, by [his] doctor . . . , [he] ha[s] been a victim of discrimination by the [DOE]." (Id. at 15-16) Plaintiff filed a "Notarization of Complaint" form with his NYSDHR complaint, which indicates that his NYSDHR complaint also serves as an EEOC Complaint. (Id. at 17)

In a May 9, 2018 decision, the NYSDHR concluded that Plaintiff had not adequately pled employment discrimination in violation of the NYSHRL. (Id. at 20) As to DOE's rejection of Plaintiff's transfer request, the NYSDHR stated that "[a] denial of a transfer request is not an adverse employment action within the meaning of the Human Rights Law." (Id.) The EEOC adopted the NYSDHR's findings. (Id. at 18)

### C. **Absence of Certified Co-Teacher**

In the SAC, Plaintiff complains about both the rejection of his transfer request and DOE's failure to provide a certified special education co-teacher for his "special education Integrated Co-Teaching Classes." (SAC (Dkt. No. 17) at 10-11, 13) Plaintiff alleges that, since October 2018, no co-teacher has appeared at Plaintiff's scheduled classes. (Id. at 9) Plaintiff claims that he has reported this issue to his union representative, but DOE has not corrected the problem. (Am. Cmplt. (Dkt. No. 10) at 6; SAC (Dkt. No. 17) at 9-10, 13)

Plaintiff further asserts that DOE has sought to cover up this issue. According to Plaintiff, on October 15, 2018, he "taught [his] second period alone as [his] co-teacher was elsewhere in the building." (SAC (Dkt. No. 17) at 9) About fifteen minutes after Plaintiff's seventh period class started, however, "[his] co-teacher appeared" and "began to assist [a student] on the content material." (Id.) "Several seconds later, the Principal, Ms. Avis Terrell

. . . appeared and conducted an informal observation of [Plaintiff's] class." (Id.)  According to

Plaintiff, the co-teacher appeared for their class at that point so "that Principal Terrell could write

up an observation stating that a co-teacher was present." (Id.)

### D.     DOE's Alleged Retaliation

Plaintiff alleges that, "[s]ince filing [his] original federal complaint on September

19, 2018, and [since the] filing [of] the amended complaint on November 2, 2018, [he] ha[s]

been retaliated against by [his] school administration." (Id. at 13)  According to Plaintiff, he

received "a poorly rated observation from [his] principal" in October 2018, which consisted of

"one ineffective and [] three developing ratings." (Id.)  Plaintiff also received "a poorly rated

observation from ATR Assistant Principal Ms. Ferguson" in December 2018, which consisted of

"three ineffective ratings . . . and two developing ratings." (Id.)

Prior to filing this action, Plaintiff had received positive performance reviews.  He

"receiv[ed] an effective overall rating for the 2017-2018 school year . . . and was the subject of a

commendatory accolade by [Principal Terrell] following her March, 2018 Principal Performance

Observation." (Id.)

Plaintiff has also been "regularly assigned" to teach without a certified special

education co-teacher, and "[n]o coverage teacher has been [assigned]" to cover for Plaintiff's co-

teacher's absence. (Id.)

## II.    PROCEDURAL HISTORY

The Complaint was filed on September 19, 2018, and alleged violations of the

ADEA and the ADA premised on DOE's failure to grant Plaintiff's transfer request. (See Cmplt.

(Dkt. No. 1))  The Amended Complaint was filed on November 2, 2019, and adds allegations

relating to the absence of a co-teacher from Plaintiff's classroom. (See Am. Cmplt. (Dkt. No.

10) at 6-9))  The SAC was filed on January 3, 2019, and adds allegations relating to the poor performance ratings Plaintiff received after filing the Complaint.  (See SAC (Dkt. No. 17) at 13)  All three of Plaintiff's complaints state that he is bringing claims under the ADEA and the ADA.  Plaintiff did not check off boxes on this District's pro se employment discrimination complaint form for Rehabilitation Act, NYSHRL, and NYCHRL claims.  (See SAC (Dkt. No. 17) at 4)  However, consistent with the obligation to interpret a pro se complaint to raise the strongest claims it suggests, Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011), this Court construes Plaintiff's pleadings as also asserting claims under these statutes.

On January 24, 2019, Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that (1) the DOF is not a proper party to this action; (2) Plaintiff has not exhausted his administrative remedies; and (3) Plaintiff has not stated a claim under the ADA or the ADEA.  (Dkt. No. 29)

## DISCUSSION

## I.    MOTION TO DISMISS STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'"  Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, a court accepts as true all well-pled factual allegations but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. Moreover, a court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). Where a court can infer no more than the mere possibility of misconduct from the factual averments – in other words, where the well-pled allegations of a complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible" – dismissal is appropriate. Twombly, 550 U.S. at 570.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco, 622 F.3d at 111 (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco, 622 F.3d at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[] in framing the complaint.'" DeLuca v. AssetIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (first alteration in original) (quoting Chambers, 282 F.3d at 153).

A district court may also "rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide,

Inc., 369 F.3d 212, 217 (2d Cir. 2004) ("[W]e may also look to public records . . . in deciding a motion to dismiss."). "In the motion to dismiss context, . . . a court should generally take judicial notice 'to determine what statements [the documents] contain[ ] . . . [but] not for the truth of the matters asserted.'" Schubert v. City of Rye, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (alterations in original) (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

In ruling on a motion to dismiss, "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and alterations omitted); see also Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (noting that pro se litigants "generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest'" (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996))). That said, a pro se plaintiff must still plead enough facts to state a claim to relief that is plausible on its face. See Hill, 657 F.3d at 122. Although courts are "obligated to draw the most favorable inferences" from a complaint, they "cannot invent factual allegations that [plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

## II.    CLAIMS AGAINST THE DEPARTMENT OF FINANCE

Defendants argue that this Court must dismiss all claims against the DOF because "[t]he SAC names the DOF as a defendant but makes no allegations concerning the DOF or anyone at DOF." (Def. Br. (Dkt. No. 29) at 14) Plaintiff does not address this argument in his opposition brief. (Dkt. No. 33)

It is well-settled that "[w]here a complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should

be granted." Suarez v. New York City Dep't of Human Res. Admin., No. 09 CIV. 8417 (WHP), 2011 WL 1405041, at *3 (S.D.N.Y. Mar. 24, 2011); see also Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (collecting cases). The Complaint, Amended Complaint, and SAC contain no allegations against the DOF. Accordingly, the claims against the DOF are dismissed.

## III.    CLAIMS AGAINST THE DEPARTMENT OF EDUCATION

### A.    Disparate Treatment Claims under the ADEA, the ADA, and the Rehabilitation Act

The Court construes the Complaint, Amended Complaint, and SAC to allege that DOE subjected Plaintiff to disparate treatment on the basis of his age and alleged disabilities in violation of the ADEA, ADA and Rehabilitation Act.

### 1.    Pleading Standards for ADEA, ADA, and Rehabilitation Act Claims

The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's age." 29 U.S.C. § 623(a)(1). "Similar to Title VII claims, a plaintiff need only meet a 'minimal' pleading standard for an age discrimination claim brought under the ADEA." Franchino v. Roman Catholic Archdiocese of N.Y., No. 15 Civ. 6299 (VB), 2016 WL 3360525, at *5 (S.D.N.Y. June 15, 2016) (citing Johnson v. Andy Frain Servs., Inc., 638 F. App'x 68, 70 (2d Cir. 2016) (summary order)), rev'd on other grounds, 692 F. App'x 39 (2d Cir. 2018) (summary order). Accordingly, "to establish a prima facie case of age discrimination in violation of the ADEA, a plaintiff must show: (1) []he is a member of a protected class; (2) []he was qualified for [his] position; (3) []he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination."

Rosen v. N.Y.C. Dep't of Educ., et al., No. 18 CIV. 6670 (AT), 2019 WL 4039958, at *6 (S.D.N.Y. Aug. 27, 2019) (citing Friedman v. Swiss Re Am. Holding Corp., 643 F. App'x 69, 71 (2d Cir. 2016) (summary order)).

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a prima facie case of employment discrimination under the ADA, a plaintiff must allege that "'(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.'" Fox v. Costco Wholesale Corp., 918 F.3d 65, 71 (2d Cir. 2019) (quoting McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013)); see also Dawson v. New York City Transit Auth., 624 F. App'x 763, 766 (2d Cir. 2015) (summary order) (same); see also Johnson v. NYS Office of Alcoholism, No. 16-CV-9769 (RJS), 2018 WL 1353258, at *4 (S.D.N.Y. Mar. 13, 2018) (same).

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . , shall, solely by reason of her or his disability . . . , be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "The same standard applies to disability discrimination claims under the Rehabilitation Act" as under the ADA. Johnson, 2018 WL 1353258, at *4; see also 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination . . . shall be the standards applied under title I of the Americans with Disabilities Act of 1990.").

"'Apart from the Rehabilitation Act's limitation to denials of benefits "solely" by reason of disability and its reach of only federally funded – as opposed to "public" – entities, [the Rehabilitation Act's] provisions purport to impose precisely the same requirements' as the [ADA] and are analyzed under the same legal standards." <u>Quadir v. New York State Dep't of Labor</u>, No. 13-CV-3327 (JPO), 2016 WL 3633406, at *2 (S.D.N.Y. June 29, 2016) (quoting <u>Cercpac v. Health & Hosps. Corp.</u>, 147 F.3d 165, 167 (2d Cir. 1998)).

Because – under the circumstances of this case – the same analysis applies to Plaintiff's discrimination claims under all three statutes, this Court considers all three claims together.

### 2.    <u>Analysis</u>

Plaintiff's disparate treatment claims are premised on three alleged adverse employment actions:  (1) DOE's denial of his request to transfer; (2) DOE's failure to provide Plaintiff with a special education certified co-teacher; and (3) the negative performance reviews Plaintiff received in October and December 2018.  (SAC (Dkt. No. 17) at 9-11, 13)

As a preliminary matter, DOE argues that any discrimination claim premised on conduct occurring before January 13, 2017 must be dismissed as time-barred.  (Def. Br. (Dkt. No. 29) at 15)  Defendants further argue that Plaintiffs' discrimination claims must be dismissed because he has not (1) exhausted his administrative remedies; or (2) pled facts demonstrating that he suffered an adverse employment action.  (<u>Id.</u> at 15-22)

### a.    <u>Statute of Limitations</u>

ADEA, ADA, and Rehabilitation Act claims are subject to "different statutes of limitations."  <u>Harris v. City of New York</u>, 186 F.3d 243, 247 (2d Cir. 1999).  "Claims sounding in discrimination pursuant to Title VII, ADA and ADEA are deemed timely if they are filed with

the administrative agency within 300 days of an alleged unlawful practice." Dimps v. Taconic Corr. Facility, No. 17-CV-8806 (NSR), 2019 WL 1299844, at *3 (S.D.N.Y. Mar. 20, 2019). "'[C]laims regarding acts that occurred more than three hundred days prior to the employee's initiation of administrative review are thus time-barred.'" Apionishev v. Columbia Univ., No. 09 Civ. 6471 (SAS), 2011 WL 1197637, at *3 (S.D.N.Y. Mar. 25, 2011) (quoting Klein v. New York Univ., No. 07 Civ. 0160 (RLC), 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008)). By contrast, the Rehabilitation Act requires that a plaintiff file his discrimination claim in federal court within three years of the injury serving as the basis for his claim. Harris, 186 F.3d at 247; see also Lawtone-Bowles v. City of New York, No. 17-CV-8024 (WHP), 2019 WL 652593, at *2 (S.D.N.Y. Feb. 15, 2019) ("[T]he Rehabilitation Act . . . impose[s] a three-year statute of limitations.").

Here, Plaintiff pleads that he filed his NYSDHR complaint on November 9, 2017. (Cmplt. (Dkt. No. 1) at 6) Accordingly, to the extent that Plaintiff's ADEA and ADA claims are premised on conduct that occurred before January 13, 2017, those claims are time-barred. Dimps, 2019 WL 1299844, at *3. To the extent that Plaintiff's Rehabilitation Act claim is premised on conduct that took place before September 19, 2016, that claim is time-barred. Harris, 186 F.3d at 247.

Plaintiff claims that between May 2017 and August 2017 he was rejected for certain teaching positions. (Cmplt. (Dkt. No. 1) at 13 (NYSDHR complaint)) Plaintiff's transfer request was denied on November 15, 2017. (SAC (Dkt. No. 17) at 11) In October 2018, DOE failed to provide Plaintiff with a special education certified co-teacher. (Am. Cmplt. (Dkt. No. 10) at 6) And in October and December 2018, Plaintiff received negative performance reviews.

(SAC (Dkt. No. 17) at 13)  To the extent Plaintiffs' claims are premised on these events, they are not time-barred.

### b.    Exhaustion of Administrative Remedies

DOE contends that to the extent that Plaintiff's ADEA, ADA, and Rehabilitation Act claims are premised on (1) DOE's failure to provide him with a special education certified co-teacher or (2) negative performance reviews, his claims must be dismissed, because neither of these issues is addressed in his NYSDHR complaint.  (Def. Br. (Dkt. No. 29) at 15)

Generally, ADEA, ADA, and Rehabilitation Act claims are barred unless the employee has exhausted available administrative remedies.  See Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot., 882 F.3d 52, 57 (2d Cir. 2018) (ADA); Legnani v. Alitalia Linee Aeree Italiane, S.P.A, 274 F.3d 683, 686 (2d Cir. 2001) (ADEA); Boos v. Runyon, 201 F.3d 178, 181 (2d Cir. 2000) (Rehabilitation Act).  "[F]or the court to consider a particular claim of alleged discrimination, it must have been either explicitly raised during the EEO process or be 'reasonably related' to claims that were."  Hodges v. Attorney Gen. of U.S., 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013) (quoting Butts v. City of New York Dep't of Hous., Pres. & Dev., 990 F.2d 1397, 1401-03 (2d Cir. 1993), superseded by statute on other grounds as recognized in Hawkins v. 1115 Legal Serv. Care, 165 F.3d 684 (2d Cir. 1998)) (Rehabilitation Act); Gomez v. New York City Police Dep't, 191 F. Supp. 3d 293, 300 (S.D.N.Y. 2016) (ADA); Tanvir v. New York City Health & Hosps. Corp., 480 F. App'x 620, 621 (2d Cir. 2012) (summary order) (ADEA). The Second Circuit has recognized three situations in which a claim not raised in an EEOC complaint may be found to be "reasonably related" to the claims that were:  (1) "where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"; (2) where the claim "is one

alleging retaliation by an employer against an employee for filing an EEOC charge"; and (3)
"where a plaintiff alleges further incidents of discrimination carried out in precisely the same
manner alleged in the EEOC charge." Butts, 990 F.2d at 1402 (2d Cir. 1993) (internal quotation
marks omitted).

Plaintiff's complaints about DOE's negative performance reviews and failure to
provide a co-teacher fall within the second category of "reasonably related" claims, because
Plaintiff contends that DOE took these actions against him after and in retaliation for his filing of
a complaint with the NYSDHR. (See SAC (Dkt. No. 17) at 13)

Accordingly, to the extent that Plaintiff's disparate treatment claim is based on (1)
DOE's failure to provide him with a qualified co-teacher, and (2) negative performance reviews,
his claim is not barred by a failure to exhaust administrative remedies.

### c.     Alleged Adverse Employment Actions

To allege an adverse employment action for purposes of a discrimination claim, a
plaintiff must plead facts demonstrating that he suffered "'a materially adverse change in the
terms and conditions of employment.'" Morgan v. NYS Atty. Gen.'s Office, No. 11 CIV. 9389
(PKC) (JLC), 2013 WL 491525, at *5 (S.D.N.Y. Feb. 8, 2013) (quoting Galabya v. New York
City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)) "'To be materially adverse a change in
working conditions must be more disruptive than a mere inconvenience or an alteration of job
responsibilities.'" Id. (quoting Galabya, 202 F.3d at 640). "Examples of materially adverse
employment actions include 'termination of employment, a demotion evidenced by a decrease in
wage or salary, a less distinguished title, a material loss of benefits, significantly diminished
material responsibilities, or other indices . . . unique to a particular situation.'" Morales v. Div.
of Youth & Family Justice, No. 14-CV-7253 (JGK), 2019 WL 3430168, at *4 (S.D.N.Y. July 30,

2019).  Here, as discussed above, Plaintiff's disparate treatment claim is premised on allegations that DOE improperly denied his transfer request, issued negative performance reviews to Plaintiff, and did not assign a co-teacher to his classes.

"[A] forced transfer, or denial of a transfer, is not an adverse employment action if the terms, privileges, duration, or condition of a plaintiff's employment do not change." Pimentel v. City of New York, 74 F. App'x 146, 148 (2d Cir. 2003) (summary order); see also Taylor v. New York City Dep't of Educ., No. 11-CV-3582 (JG), 2012 WL 5989874, at *8 (E.D.N.Y. Nov. 30, 2012) (same).  Here, Plaintiff claims that a transfer to a school closer to his residence would "ameliorate somewhat" his hypertension, and permit him to commute other than by subway, the noise of which is causing damage to his hearing.  (SAC (Dkt. No. 17) at 11) Plaintiff "does not allege that the transfer would have offered [him] materially different terms and conditions of employment, such as more money, prestige, or authority," however.  See Taylor, 2012 WL 5989874, at *8.  Because the SAC does not plead facts demonstrating that a transfer would materially change the terms and conditions of Plaintiff's employment, the denial of his transfer request does not constitute an adverse employment action for purposes of Plaintiff's ADEA, ADA, and Rehabilitation Act discrimination claims.  See id. (plaintiff contended that a transfer to a different school "would be 'a tremendous benefit' in that her current commute 'is approximately five (5) hours per day and costs approximately twenty-five ($25.00) dollars per week' whereas her commute to PS 14 would be 'approximately twenty (20) minutes at no cost'"; court held that the denial of the transfer request was not a materially adverse employment action, even though "working closer to home would be more convenient for [plaintiff]"); see also Lebowitz v. New York City Dep't of Educ., No. 15-CV-2890 (LDH) (ST), 2017 WL 1232472, at *7 (E.D.N.Y. Mar. 31, 2017) (plaintiff "sought a transfer because his

continued placement at [a school] caused him anxiety and distress"; court held that denial of transfer request was not an adverse employment action because plaintiff "allege[d] no facts that would indicate what effect, if any, such a transfer would have on the terms and conditions of his employment," and "[t]here [was] no allegation . . . that his responsibilities would have been altered or that his compensation would have been increased").

As to the negative performance evaluations that were issued to Plaintiff, "[a] negative employment evaluation, if accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss, may constitute an adverse employment action." Siddiqi v. New York City Health & Hosps. Corp., 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008) (citing Whaley v. City Univ. of N.Y., 2008 U.S. Dist. LEXIS 35156, at *50 (S.D.N.Y.2008)). However, "a negative performance review, without any showing of a negative ramification, cannot constitute an adverse employment action." Natofsky v. City of New York, 921 F.3d 337, 352 (2d Cir. 2019); see also Siddiqi, 572 F. Supp. 2d at 367 ("'[N]egative evaluations, standing alone without any accompanying adverse results, are not cognizable.'" (quoting Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001)); Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999) ("Given that plaintiff's negative reviews did not lead to any immediate tangible harm or consequences, they do not constitute adverse actions materially altering the conditions of his employment."), aff'd, 205 F.3d 1327 (2d Cir. 2000).

Here, Plaintiff has pled no facts suggesting that he suffered negative consequences as a result of the negative performance reviews. The mere fact of a negative evaluation does not constitute actionable discrimination. Accordingly, Plaintiff's negative performance reviews do not constitute an adverse employment action for purposes of his ADEA, ADA, and Rehabilitation Act claims.

As to DOE's failure to provide Plaintiff with a co-teacher, Plaintiff has not alleged facts giving rise to an inference of discrimination. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010) ("[T]o establish a prima facie case of age discrimination, [a plaintiff] must show . . . that she experienced adverse employment action, and . . . that such action occurred under circumstances giving rise to an inference of discrimination."); Edwards v. Elmhurst Hosp. Ctr., No. 13-CV-985 (RRM) (LB), 2013 WL 783009, at *2 (E.D.N.Y. Mar. 1, 2013) (holding, in the context of an ADA claim, that a plaintiff must show that the adverse employment action occurred "under circumstances giving rise to a reasonable inference of discrimination"). Plaintiff has not pled facts suggesting that he was denied a co-teacher because of his age or his disability. Nor has he alleged that DOE provided other teachers similarly situated to Plaintiff with co-teachers yet denied Plaintiff a co-teacher. Absent allegations of "any animus, any derogatory comments, or anything else" that would raise an inference of discrimination, Plaintiff cannot premise a discrimination claim on DOE's failure to provide him with a co-teacher. Gupta v. New York City Sch. Const. Auth., No. 04 CV 2896 (NGG) (LB), 2007 WL 1827418, at *4 (E.D.N.Y. June 25, 2007), aff'd, 305 F. App'x 687 (2d Cir. 2008) (summary order); see also Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015) (plaintiff asserting a discrimination claim must allege facts demonstrating "at least minimal support for the proposition that the employer was motivated by discriminatory intent").

For all these reasons, Plaintiff's discrimination claims under the ADEA, the ADA, and the Rehabilitation Act are dismissed.

### B.   Failure to Accommodate Claim under the ADA and the Rehabilitation Act

This Court construes the SAC as asserting that – in denying Plaintiff's transfer request – DOE failed to reasonably accommodate his disabilities in violation of the ADA and the

Rehabilitation Act.

"The ADA requires employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee], unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [its] business.'" Quadir, 2016 WL 3633406, at *2 (quoting 42 U.S.C. § 12112(b)(5)(A)). "Similarly, regulations promulgated under the Rehabilitation Act by the Department of Health and Human Services require recipients of federal funds to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program." Id. (emphasis in original) (internal quotation marks omitted).

To state a claim for failure to accommodate under either the ADA or the Rehabilitation Act, an employee must allege that:

> "(1) he is a person with a disability under the meaning of the Act; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

Noll v. Int'l. Bus. Mach. Corp., 787 F.3d 89, 94 (2d Cir. 2015) (quoting McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97 (2d Cir. 2009)) (alterations omitted); Quadir, 2016 WL 3633406, at *2. "[R]easonable accommodation may include, inter alia, modification of job duties and schedules. . . ." McBride, 583 F.3d at 97 (citing 42 U.S.C. § 12111(9)(B)) (emphasis in original).

DOE contends that Plaintiff's failure to accommodate claim must be dismissed because (1) he did not provide sufficient notice to DOE of any alleged disability; (2) he has not alleged that hypertension is a qualified disability under the ADA or Rehabilitation Act; and (3)

"[t]he SAC does not contain any facts explaining how plaintiff's hypertension and hearing loss could affect plaintiff's ability to perform the essential job functions of plaintiff's job." (Def. Br. (Dkt. No. 29) at 22-23)

"The ADA defines a disability as: '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" Dipinto v. Westchester Cty., et al., No. 18-CV-793 (KMK), 2019 WL 4142493, at *7 (S.D.N.Y. Aug. 30, 2019) (quoting 42 U.S.C. 12102(1)) (emphasis in Dipinto). "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii). Here, the SAC does not plead facts suggesting that Plaintiff's hypertension substantially limits him in any way, much less in performing a major life activity. See Griffin v. Brighton Dental Grp., No. 09-CV-6616P (MP), 2013 WL 1221915, at *4 (W.D.N.Y. Mar. 25, 2013) (dismissing an ADA claim because the plaintiff "failed to identify or describe her alleged disability and has not alleged any facts to suggest that she suffers from any impairment that substantially limits one or more of her major life activities") Accordingly, Plaintiff's hypertension cannot provide the basis for a failure to accommodate claim.

Plaintiff also alleges that he suffers from hearing loss, which DOE concedes is a disability under the ADA. (See SAC (Dkt. No. 17) at 11; Def. Br. (Dkt. No. 29) at 18). Moreover, Plaintiff submitted an excerpt from his medical records to DOE, in which his doctor states that because "of [Plaintiff's] travel in subway with lot[s] of sound his hearing is deteriorating." (See Cmplt. (Dkt. No. 1) at 23)

Under certain circumstances, an employer may have an obligation to assist "an otherwise qualified disabled employee with assistance related to her ability to get to work." Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1517 (2d Cir. 1995). In Lyons, for example, the plaintiff had been struck by an automobile and suffered "near-fatal injuries" that permanently impeded her ability to walk, stand, and climb or descend stairs. Id. at 1513. Lyons told her employer – the Legal Aid Society – that "she would be unable to take public transportation from her home in New Jersey to the Legal Aid office in Manhattan because such 'commuting would require her to walk distances, climb stairs, and on occasion to remain standing for extended periods of time,' thereby 'overtax[ing] her limited physical capabilities.'" Id. at 1513-14 (alterations in original). "Lyons's physician, an orthopedic and reconstructive plastic surgeon, advised Legal Aid by letter that such a parking space was 'necessary to enable [Lyons] to return to work.'" Id. at 1514 (alterations in original). The Legal Aid Society nonetheless rejected Lyon's request that she be provided with a parking space. Id. The district court dismissed plaintiff's failure to accommodate claims under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL. Id. The Second Circuit reversed, finding that plaintiff had plausibly alleged that her employer had improperly rejected her request for a reasonable accommodation. Id. at 1517; see also Nixon-Tinkleman v. New York City Dep't. of Health, 434 F. App'x. 17, 20 (2d Cir. 2011) (summary order) (reversing district court order granting defendants summary judgment on plaintiff's failure to accommodate claim under the ADA and Rehabilitation Act; "district court should have considered whether defendants could have reasonably accommodated [plaintiff's] needs by simply transferring her back to Queens or another closer location, allowing her to work from home, or providing a car or parking permit").

Here, it is far from clear that Plaintiff's request for an accommodation was reasonable. To the extent that noise in the subway caused him to suffer damage to his hearing, it is not clear why that issue could not have been addressed with earplugs or noise-cancelling headphones. Nor does Plaintiff explain why driving to work, or taking a bus to work, is not a feasible alternative to the subway. But the determination of whether a requested accommodation is reasonable requires a fact-intensive inquiry that is ill-suited for resolution on a motion to dismiss. See Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995) ("[I]t is clear that the determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it."); Torres v. New York City Dep't of Educ., No. 18-CV-2156 (NGG) (RER), 2019 WL 2124891, at *7 (E.D.N.Y. May 15, 2019) (denying defendant's motion for judgment on the pleadings on plaintiff's failure to accommodate claim because whether "[p]laintiff's request to transfer was reasonable or not" is "'a fact-specific inquiry,'" and "therefore not properly disposed of at the pleadings stage" (quoting Staron, 51 F.3d at 356)); Goonan v. Federal Reserve Bank of New York, 916 F. Supp. 2d 470, 482 (S.D.N.Y. 2013) ("At the motion to dismiss stage, the [defendant] bears the weighty burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable accommodation falls completely in its favor.")

Accordingly, DOE's motion to dismiss Plaintiff's failure to accommodate claim is denied.

### C. Retaliation Claims under the ADEA, the ADA, and the Rehabilitation Act

In the SAC, Plaintiff claims that he is "being deliberately targeted by the [school] administration and by those in higher echelons in the DOE for having filed [his] lawsuit in the

United States Federal Court." (SAC (Dkt. No. 17) at 9-10, 13) The Court understands Plaintiff to also assert that the negative performance reviews and the failure to assign a co-teacher to his classroom was DOE retaliation for his NYSDHR complaint. (See id.; see also, Pltf. Opp. (Dkt. No. 33) at 16)

Retaliation claims under the ADEA, the ADA, and the Rehabilitation Act are analyzed under the same framework that applies to retaliation claims under Title VII. See Cerni v. J.P. Morgan Sec. LLC, 208 F. Supp. 3d 533, 538 (S.D.N.Y. 2016) (applying Title VII retaliation analysis to ADEA retaliation claim); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (applying Title VII retaliation analysis to ADA retaliation claim); Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148 (2d Cir. 2002) (elements of a retaliation claim under the Rehabilitation Act and the ADA are same). Accordingly, to plead a retaliation claim under any of these three statutes, a plaintiff must allege "that: (1) he engaged in an activity protected by the [statute]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia, 313 F.3d at 719.

DOE does not dispute that Plaintiff engaged in protected activity when he (1) requested a transfer due to his alleged disabilities; (2) filed his NYSDHR complaint; and (3) filed the instant action. (Def. Br. (Dkt. No. 29) at 25) Nor does DOE deny that it was aware of Plaintiff's protected activity. (Id.) DOE argues, however, that Plaintiff has not shown (1) that DOE took any adverse action against him; or (2) a causal connection between Plaintiff's protected activity and any supposed adverse action DOE took against Plaintiff. (Id. at 25-28)

1.    **Adverse Employment Action**

"The standard for an 'adverse employment action' in a retaliation claim . . . is not as demanding as it is in a discrimination claim." Quadir v. New York State Dep't of Labor, 39 F. Supp. 3d 528, 542 (S.D.N.Y. 2014). "In the retaliation context, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 542-43 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). As discussed above, Plaintiff contends that DOE retaliated against him by (1) issuing negative performance reviews; and (2) failing to assign a "certified special education co-teacher" to his classroom. (SAC (Dkt. No. 17) at 13).

It is well established that "a negative performance review can constitute an adverse action for purposes of a retaliation claim," even though this conduct would not support a charge of discrimination. Cerni, 208 F. Supp. 3d at 539; see also Siddiqi, 572 F. Supp. 2d at 372 ("Unlike in discrimination claims, negative performance reviews, standing alone, can be considered an adverse employment action."). The Second Circuit has also held that because "a poor performance evaluation could very well deter a reasonable worker from complaining," it may serve as the basis for a retaliation claim. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 92 (2d Cir. 2015). Accordingly, Plaintiff's claim that DOE issued negative performance reviews to him in retaliation for his protected activity is sufficient to allege an adverse employment action.[3]

---

[3] Carter v. New York City Dep't of Corr., 7 F. App'x 99, 103 (2d Cir. 2001) (summary order) and Johnson v. Frank, 828 F. Supp. 1143, 1153 (S.D.N.Y. 1993), cited by DOE, are not persuasive here, because they precede the Supreme Court's decision in White. Nugent v. St. Luke's-Roosevelt Hosp. Center, 303 F. App'x 943, 945 (2d Cir. 2008) (summary order), also cited by DOE, is irrelevant, because it does not involve a negative performance review.

Similarly, Plaintiff's claim that DOE denied him a qualified co-teacher for his special education classes is sufficient to plead an adverse employment action. See Vega, 801 F. 3d at 91 (plaintiff claimed "that after he engaged in protected activity by filing a charge of discrimination with the EEOC in August 2011, he was assigned more students with excessive absenteeism records (jumping from 20% to 75%), his salary was temporarily reduced, he was not notified that the curriculum for one of his classes was changed, and he received a negative performance evaluation"; Second Circuit held that "[e]ach of these allegations plausibly states a claim of retaliation," because each action "'could well dissuade a reasonable worker from making or supporting a charge of discrimination'" (quoting White, 548 U.S. at 57) (emphasis in Vega).

2.      **Causal Connection**

In the context of a retaliation claim, "[c]ausation can be proven either: '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" Galimore v. City Univ. of New York Bronx Cmty. Coll., 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009) (quoting Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)). "Where, as here, a plaintiff relies exclusively on timing to plead causation, the temporal proximity between the protected activity and adverse employment action must be 'very close.'" Vale v. Great Neck Water Pollution Control Dist., 80 F. Supp. 3d 426, 441 (E.D.N.Y. 2015) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

Here, Plaintiff made his transfer request on September 25, 2017 (SAC (Dkt. No. 17) at 10); he filed his NYSDHR complaint on November 9, 2017 (Cmplt. (Dkt. No. 1) at 6); and he filed the instant action on September 19, 2018 (id.). Plaintiff contends that he was given his first negative performance review – and was denied a qualified co-teacher – in about October 2018. (SAC (Dkt. No. 17) at 13).

There is sufficient temporal proximity between the instant lawsuit and the alleged retaliatory acts to permit Plaintiff's retaliation claim to proceed. See, e.g., Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation."); Treglia, 313 F.3d at 721 ("The temporal proximity between this protected activity in February 1998 and the allegedly adverse employment actions in March 1998 is sufficient to establish the required causal link for a prima facie case.").

D.     **NYSHRL and NYCHRL Claims**

Plaintiff used this District's pro se employment discrimination complaint form in filing the Complaint, Amended Complaint, and SAC. The complaint form contains a menu of check off boxes for various types of discrimination claims, including boxes for Rehabilitation Act claims, and claims brought under the NYSHRL and the NYCHRL. (See Cmplt. (Dkt. No. 1) at 4; Am. Cmplt. (Dkt. No. 10) at 4; SAC (Dkt. No. 17) at 4)  On the three occasions that Plaintiff filed complaints, he never checked off the boxes for Rehabilitation Act, NYSHRL, and NYCHRL claims. In his opposition brief, however, Plaintiff asserts that he is bringing claims under all three statutes. (See Pltf. Opp. (Dkt. No. 33) at 1, 17-18)  DOE contends that this Court

should not review claims "first interposed in plaintiff's opposition to a motion to dismiss." (Def. Reply (Dkt. No. 38) at 8)

"A <u>pro se</u> plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint.'" <u>Davila v. Lang</u>, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (quoting <u>Vlad-Berindan v. MTA New York City Transit</u>, No. 14-cv-675, 2017 WL 6982929, at *5 (S.D.N.Y. Dec. 10, 2014)); <u>see also</u> <u>Lang v. New York City Health & Hosps. Corp.</u>, No. 12 CIV. 5523 (WHP), 2013 WL 4774751, at *4 (S.D.N.Y. Sept. 5, 2013) (considering Section 1981 and NYSHRL claims raised in an opposition brief because the brief "simply articulates additional claims that the original complaint could have been construed to allege"). Here, the Complaint, Amended Complaint, and SAC can all be construed to assert discrimination claims based on Plaintiff's age and alleged disabilities under the Rehabilitation Act, the NYSHRL, and the NYCHRL. These complaints can also be construed to assert failure to accommodate and retaliation claims under the Rehabilitation Act, the NYSHRL, and the NYCHRL. Accordingly, Plaintiff's Rehabilitation Act, NYSHRL, and NYCHRL claims will not be dismissed on the ground that they were first asserted in Plaintiff's opposition brief.

Any disparate treatment claim brought under the Rehabilitation Act is dismissed for the reasons stated above. Plaintiff's retaliation and failure to accommodate claims brought under the Rehabilitation Act will proceed. DOE has not addressed the merits of Plaintiff's NYSHRL and NYCHRL claims; accordingly, those claims will proceed.

## IV.    LEAVE TO AMEND

With respect to leave to amend, the Second Circuit has cautioned that district courts "should not dismiss [a <u>pro</u> <u>se</u> complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000). "'Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.'" <u>Lucente v. Int'l Bus. Machines Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) (quoting <u>Ruffolo v. Oppenheimer & Co.</u>, 987 F.2d 129, 131 (2d Cir. 1993) (<u>per</u> <u>curiam</u>)). "One appropriate basis for denying leave to amend is that the proposed amendment is futile. . . . An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." <u>Id.</u> (internal citations omitted).

Here, Plaintiff has already amended his complaint twice. Those amendments appear to have been at Plaintiff's volition, however, and not because of defects identified by a court. This Opinion and Order represents the first occasion on which a court has brought defective pleading to Plaintiff's attention. Accordingly, there has not been a pattern on Plaintiff's part of a failure to correct court-identified pleading defects. Moreover, the Court cannot state that any amendment would be futile. According, Plaintiff is granted leave to move to amend.

### CONCLUSION

For the reasons stated above, (1) all claims against Defendant New York City Department of Finance are dismissed; (2) DOE's motion to dismiss Plaintiff's discrimination claims under the ADEA, the ADA, and Rehabilitation Act is granted; and (3) DOE's motion to dismiss is otherwise denied.

Any motion for leave to file a Third Amended Complaint is to be filed by December 16, 2019. The proposed Third Amended Complaint is to be attached as an exhibit to the motion.

The Clerk of Court is directed to mail a copy of this order by certified mail to Patrick Dennis Smith, 105-00 Shore Front Parkway, Apt. 8A, Rockaway, New York 116974.

Dated: New York, New York
November 22, 2019

SO ORDERED.

Paul G. Gardephe
United States District Judge